IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| DAVID WAYNE NELSON, | Cause No. CV 22-5-H-BMM |
| Petitioner, | |
| vs. | **ORDER** |
| JIM SALMONSEN and AUSTIN KNUDSEN, | |
| Respondents. | |

This case comes before the Court on state pro se Petitioner David Wayne Nelson ("Nelson")'s petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.)

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading. The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *Id.*; *see also* 28 U.S.C. § 1915A(B)(1),(2) (the court must dismiss a habeas petition or portion thereof if the prisoner raises claims that are legally "frivolous or malicious" or fail to state a basis upon which habeas relief may be granted). As explained below, Nelson's prosecutorial misconduct claim does not survive

1

deferential review under 28 U.S.C. § 2254(d), and his new evidence claim is procedurally defaulted. The petition will be dismissed.

## I.    BACKGROUND

Nelson is a Montana state prisoner who was convicted of two counts of deliberate homicide in the Third Judicial District Court, Powell County, Montana. (Doc. 1 at 2–3.) He is serving two concurrent life sentences at Montana State Prison in Deer Lodge, Montana. (Doc. 1 at 3.)

Nelson was charged in December 2015 with felony theft, two counts of deliberate homicide, and two counts of felony obstructing justice. *State v. Nelson*, 2021 MT 61N, ¶ 3.[1] Nelson was accused of killing his employer and her son after the son discovered that Nelson had stolen some silver from him. Nelson initially denied the charges but later confessed in full. *Id.*, ¶ 4. Nelson emphasized to investigators his concerns that his wife might be prosecuted for various acts that could be seen as related to his crimes.

The County Attorney initiated plea discussions in a February 2, 2016, letter from the County Attorney to Nelson's counsel. (Doc. 9-7 at 13.) The letter responded to Nelson's concerns about his wife and specified that the State did not

---

[1] The Court directed the State to file several documents from the state court record. (Doc. 7.) Citations in this Order refer to the documents now in the Court's docket, other than the opinion of the Montana Supreme Court, which will be cited by its publicly available citation.

anticipate filing charges against her "based upon information currently available to law enforcement." (*Id.*)

Nelson signed a plea agreement on September 6, 2016. (Doc. 9-7.) This agreement did not mention anything related to Nelson's wife. The State agreed to dismiss the theft and obstructing justice charges in exchange for Nelson's pleas of guilty to the two homicide charges. (Doc. 9-7 at 15.) The State also agreed to recommend concurrent life sentences for the homicide counts and not to recommend a parole restriction. (*Id*. at 15–16.) The agreement stated that Nelson would have the right to withdraw his guilty plea if the Montana state district court ("state district court") declined to follow the State's recommended sentence. (*Id*. at 17.) Nelson waived several rights, including his right to appeal, in his accompanying written plea of guilty. (*Id.* at 25.)

The state district court conducted a change of plea hearing on September 16, 2016. The judge discussed the terms of the plea agreement with Nelson, including the possible sentences available, the fact that the judge could impose something not agreed upon by the parties, and that if the judge chose not to impose the sentence agreed upon by the parties, Nelson had the right to withdraw his plea and proceed to trial. (Doc. 9-9 at 40–42.) Nelson indicated that he understood. Nelson also agreed that he had not been threatened in a way that caused him to plead guilty, nor had he received any promises that were not included in the plea agreement

document. (*Id.* at 42.) Nelson admitted to killing both victims. (*Id.* at 44–46.)

The state district court sentenced Nelson on March 7, 2017. The State declined to call the author of the Pre-Sentence Investigation report as a witness at the sentencing hearing because the author had a different sentence recommendation from the one the State had agreed to in the plea agreement. (*Id.* at 72–73.) The State called a lawyer for the homicide victims' estate, who read a letter from the victims' family. A family member argued for a parole restriction on the basis that she did not want to have to worry about Nelson getting out of prison or about having to attend parole hearings. (*Id.* at 74–75.)

At the hearing, the State asked the state district court to follow the plea agreement and to sentence Nelson to two concurrent life sentences. (*Id.* at 85.) A life sentence statutorily precludes parole eligibility for 30 years under Montana law. Mont. Code Ann. § 46-23-201(4). The state district court wrestled with the implications of the two options before it: (1) departing from the plea agreement and allowing Nelson to withdraw his plea, thereby not giving the family the resolution it sought; and (2) following the plea agreement, not imposing a parole restriction, and forcing the family to contemplate the possibility of Nelson's release in the future. (Doc. 9-9 at 88–93.) Nelson's sentence would have been the same either way: 30 years without the possibility of parole.

The state district court asked Nelson's counsel whether the defense

"agree[d] that the backdoor provided by 1B Plea Agreements would not be triggered by a parole restriction of 30 years imposed as a part of the Judgment rather than just relying upon the statute[.]" (*Id.* at 93.) Defense counsel consulted with Nelson and then agreed. The state district court again confirmed that the plea bargain Nelson had made with the State was 30 years without the possibility of parole. (*Id.*)

The state district court entered its judgment on March 10, 2017. The judgment included an explicit parole restriction and discussed the court's conclusion that the parole restriction did not trigger Nelson's right to withdraw his guilty plea. (Doc. 9-4.) The state district court filed an amended judgment on August 14, 2017, to correct the name of one of the victims due restitution. (Doc. 9-5.) The amended judgment omitted the lengthy discussion of Nelson's parole restriction.

Nelson did not appeal his conviction. Nelson petitioned for post-conviction relief ("PCR") in the state district court on February 14, 2018. (Doc. 9-7.) The PCR petition alleged that his counsel failed to file a notice of appeal, despite being asked. (*Id.* at 33.) Nelson also contended that his plea was not knowing. Nelson asserted that his plea agreement was a result of prosecutorial misconduct on the basis that the County Attorney had threatened to prosecute Nelson's wife if he did not sign the agreement. (*Id.* at 34–37.) Nelson also alleged that the State had failed

5

to hold up its end of the plea agreement because Nelson was not sentenced without a parole restriction. (*Id.* at 40–41.) Nelson's final ground for PCR was ineffective assistance of counsel related to Nelson's sentence and his attorney's ostensible "abandonment" of Nelson in court. (*Id.* at 55.) Nelson also contended that his counsel should have withdrawn from representing him in the state district court proceedings.

Nelson's trial counsel responded to the claim of ineffective assistance of counsel. (Doc. 9-8.) The State responded to the claims related to prosecutorial misconduct and the plea agreement. (Doc. 9-9.) The state district court denied Nelson's PCR petition. (Doc. 9-10.)

Nelson appealed to the Montana Supreme Court. (Doc. 9-11.) Nelson's appellate brief more clearly outlined the following four claims: (1) ineffective assistance of counsel through abandonment and failure to preserve Nelson's option to appeal; (2) the state district court's abuse of discretion in not allowing Nelson to withdraw his appeal based on fundamental mistake as to consequences of a guilty plea, coercion and prosecutorial misconduct, and violation of the terms of the plea agreement; (3) prosecutorial misconduct; and (4) breach of the plea agreement by the State and the state district court. (Doc. 9-11 at 6.)

The Montana Supreme Court denied Nelson's petition in an unpublished memorandum opinion. *State v. Nelson*, 2021 MT 61N.

## II. NELSON'S CLAIMS

Nelson's habeas petition before the Court asserts the following two claims: (1) prosecutorial misconduct on the basis that the County Attorney obtained Nelson's consent to the plea agreement through making threats to Nelson's wife; and (2) new evidence. (Doc. 1 at 4–5.) Nelson asks the Court to grant him a new trial. (*Id.* at 7.)

Nelson has also filed a document that appears to relate to his attorney in an earlier proceeding (Doc. 6) and a brief in response to the State's denial of his coercion claim. (Doc. 10.)

### III. ANALYSIS

Nelson properly exhausted his state-court remedies as to the prosecutorial misconduct claim. The Court reviews the state district court's findings and conclusions as to this claim under a deferential standard. Nelson did not raise his claim of new evidence before the state district court. The Court will consider whether Nelson's new evidence claim proves procedurally defaulted.

**A. Ground One: Prosecutorial Misconduct.**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal district court generally may not grant a habeas corpus petition "with respect to any claim that was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). AEDPA permits federal-court review,

however, in the following two circumstances: (1) where the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1); or (2) where the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2); *Knowles v. Mirzayance,* 556 U.S. 111, 114 (2009).

"'[C]learly established Federal law' . . . is the governing legal principle or principles set forth by the Supreme Court [in its holdings] at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 70–71 (2003). A state court's decision proves contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor,* 529 U.S. 362, 405–06 (2000).

A state court's factual findings prove unreasonable if "reasonable minds reviewing the record" could not agree with them. *Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015) (citations omitted). "For relief to be granted, a state court merits ruling must be so lacking in justification that there was an error . . . beyond any possibility for fair-minded disagreement." *Bemore v. Chappell*, 788 F. 3d 1151, 1160 (9th Cir. 2015). "A state court's determination that a claim lacks merit

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Nelson raised his claims of prosecutorial misconduct before the Montana Supreme Court. (Doc. 9-11 at 6, 12–13.) The Montana Supreme Court considered Nelson's arguments and the state district court's findings and concluded that it was beyond material dispute that Nelson had not been coerced into his plea. *Nelson*, 2021 MT 61N, ¶ 11. The Montana Supreme Court determined that the County Attorney's initial plea letter responded to Nelson's previously communicated concerns and did not constitute a threat or coercion; that Nelson's final plea agreement made no mention of his wife; that the state district court's plea colloquy thoroughly investigated whether Nelson had been threatened or promised something outside the bounds of the document to enter the plea agreement; and that Nelson explicitly denied having been threatened or coerced into signing the agreement. *Id.*, ¶¶ 3–6. The Montana Supreme Court's concluded on the basis of this evidence that Nelson's prosecutorial misconduct claim lacked merit.

Based on a review of the record, the Court finds that the state-court decisions on the merits of Nelson's prosecutorial misconduct claim comport with clearly established federal law and prove reasonable. *Brumfield*, 576 U.S. at 313–14; *United States v. Castello*, 724 F.2d 813, 815 (9th Cir. 1984). Neither of the

9

Section 2254(d) exceptions apply. 28 U.S.C. § 2254(d)(1), (2). The Court therefore lacks the power to review Nelson's prosecutorial misconduct claim.

**B. Ground Two: New Evidence.**

A state prisoner must exhaust their state-court remedies before petitioning for a writ of habeas corpus in federal court. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); 28 U.S.C. § 2254(b)(1)(A). "The exhaustion-of-state-remedies doctrine, now codified at 28 U.S.C. §§ 2254(b) and (c), reflects a policy of federal-state comity[.]" *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks and citation omitted).

To meet the exhaustion requirement, a petitioner must take the following actions: (1) use the "remedies available," § 2254(b)(1)(A), through the state's established procedures for appellate review, *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); (2) describe "the federal legal theory on which [the] claim is based," *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008); and (3) describe "the operative facts . . . necessary to give application to the constitutional principle upon which the petitioner relies," *id.*; *see also Gray v. Netherland*, 518 U.S. 152, 162–63 (1996). A petitioner must meet all three prongs of the test. "Mere 'general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial,' do not establish exhaustion." *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005).

10

The record demonstrates that Nelson never raised claims of actual innocence or new evidence in his post-conviction proceedings. (Doc. 1 at 6.) Mont. Code Ann. § 46-21-102(2) allows petitioners to file what would ordinarily be an untimely state post-conviction petition, if they do so within one year of discovering the evidence, or when they reasonably should have discovered it.

Nelson's habeas petition contains a three-page supplement containing the purportedly new evidence. (Doc. 1 at 9–12.) The supplement provides Nelson's version of what happened at the time of the murders. Nelson alleges that two other men killed the victims, forced Nelson to help them clean up the evidence and to sell the silver, and threatened to harm Nelson's wife if he went to the police. (*Id.* at 9–11.) This explanation parallels Nelson's statements to investigators prior to his initial confession. (*Compare id.*, *with* Doc. 9-9 at 61–63.) Nelson also claims that he falsely confessed to law enforcement that he killed the two victims on October 24 or 25, 2015. (Doc. 1 at 11.) Nelson's supplement states that he chose this time range because both he and law enforcement were aware that other people had seen the victims afterward, on October 28, 2015. (*Id.*) Nelson asserts that he expected the time discrepancy to have alerted investigators that Nelson had confessed falsely. (*Id.*) Nelson claims that he told his attorneys about these witnesses and about being threatened prior to his sentencing. (*Id.*) His attorneys allegedly told Nelson that they had discussed the matter with the Sheriff but took no further

11

action. (*Id.*)

Nelson cannot avail himself of Mont. Code Ann. § 46-21-102(2)'s exceptions to untimely claims. Nelson did not discover this evidence within the last year. He has been aware of this evidence for over five years. (Doc. 9-9 at 61–63.) Nelson is time-barred from seeking PCR in state court on the basis of this evidence. Mont. Code Ann. § 46-21-102(2). The new evidence claim is thereby technically exhausted in federal court because Nelson has no state venue open to him. 28 U.S.C. § 2254(b)(1)(B)(i).

A technically exhausted claim qualifies as procedurally defaulted unless a petitioner can show cause and prejudice for their failure to raise the claim in state court. *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011). "An objective factor outside of a petitioner's control" can constitute cause. *Id.* (internal citation omitted). A petitioner can satisfy the prejudice prong by demonstrating that the failure "worked to [the petitioner's] *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). A federal court may alternatively consider a procedurally defaulted claim if a petitioner demonstrates a "fundamental miscarriage of justice" by "establish[ing] that under the probative evidence [the petitioner] has a colorable claim of factual innocence." *Cooper*, 641 F.3d at 327 (quoting *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

Nelson cannot clear these hurdles. First, Nelson's habeas petition contains no information outside of his control that could constitute a just cause for his failure to pursue the matter. He knew his story about the intruders and about the supposed October 28, 2015, witnesses prior to his sentencing. Nelson admitted to the murders and changed his plea to guilty while having this information. He also had this information at the time he filed his initial PCR petition in the state district court in 2018. Nelson cannot show cause for failing to timely raise this issue. *Cooper*, 641 F.3d at 327.

Second, a colorable claim of actual innocence does not create a cognizable basis for federal habeas relief on its own. *Herrera v. Collins*, 506 U.S. 390, 393 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Moore v. Dempsey*, 261 U.S. 86, 87–88 (1923); *Herrera*, 506 U.S. at 400. Nelson claims that he is innocent but points to no constitutional error in the method by which he was convicted. Nelson has not alleged the prejudice required to relieve him of his procedural default. "[A] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits. *Herrera*, 506 U.S. at 404. Nelson has not passed through this gateway. His new evidence claim proves procedurally defaulted.

## IV. CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A certificate of appealability should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

A certificate of appealability will be denied.

Based on the foregoing, the Court enters the following:

### ORDER

1. Nelson's Petition (Doc. 1) is **DENIED** and **DISMISSED** with prejudice.

2. The Clerk of Court is directed, by separate document, to enter Judgment in favor of Respondent and against Petitioner.

3. A certificate of appealability is **DENIED**.

DATED this 14th day of November, 2022.

_____
Brian Morris, Chief District Judge
United States District Court

15